THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RANDY CHARRIEZ-ROLON** <br><br> **Petitioner,** <br><br> **v.** <br><br> **UNITED STATES OF AMERICA,** <br><br> **Respondent.** | **Civil No. 20-1522 (ADC)** <br> **[Related to Crim. No. 14-199 (ADC)]** |

**OPINION AND ORDER**

Randy Charriez-Rolón ("petitioner") filed a *pro se* petition for relief under 28 U.S.C. § 2255 ("petition"), **ECF No. 1**, which was supplemented by petitioner's filing at **ECF No. 11**. In essence petitioner asserts a claim of ineffective assistance of trial counsel. The claim is premised on trial counsel's failure to object to the government's statements during closing arguments and to the curative instruction provided to the jury in relation therewith. For the following reasons, the petition at **ECF No. 1,** as amended and/or supplemented at **ECF No. 11,** is **DENIED.**[1]

**I.    Procedural and factual background**

In 2009, when minor XFS was five, his family moved to petitioner's neighborhood in Toa Alta, Puerto Rico. Petitioner, who lived four houses away, welcomed the new family and offered to help in any way they needed. Petitioner began regularly spending time with XFS and the

---

[1] The case is summarily dismissed under Rule 4(b) of the Rules Governing § 2255 Proceedings. *Carey v. United States*, 50 F.3d 1097, 1098 (1st Cir. 1995).

family in their day-to-day activities. Perhaps because of his problems communicating with others and school bullying, XFS was particularly welcoming of petitioner's gestures, invitations, and gifts, which included ice cream, video games, bicycles, among others. *United States v. Charriez-Rolón*, 923 F.3d 45, 47 (1st Cir. 2019).

Several years later, XFS told a family member about petitioner's sexual conduct towards him. Because they are not strictly necessary to address the issues before the Court, the "horrifying secret[s]" revealed by XFS will remain confined to the First Circuit's opinion *United States v. Charriez-Rolón*, 923 F.3d at 45-50 and trial transcripts. **Crim. No. 14-199,** ECF No. 150-154.

Petitioner was arrested several months after. He waived his *Miranda* rights and provided consent for the search of his home, vehicle, and cellphone. A grand jury returned an indictment (eventually superseded) charging petitioner with transporting a minor with the intent to engage in criminal sexual activity (Counts One and Two) and possessing child pornography (Count Three) in violation of 18 U.S.C. §§ 2423(a), 2252A(a)(5)(B) and (b)(2). **Crim. No. 14-199**, ECF No. 40.

The defense moved for a judgment of acquittal under Fed. R. Crim. P. 29 on the child pornography charges at the end of the government's turn. The Court denied the request and the defense proceeded to present their case. Against counsel's advice and after this Court's admonishment of rights, petitioner took the stand. **Crim. No. 14-199**, ECF No. 153 at 77.

Petitioner testified on limited topics. *Id.*, at ECF No. 90-97. Afterwards, the defense renewed its request for acquittal, which the Court again denied in open court. *Id.*, at 103.

On its rebuttal summation, the government argued:

> [I]t dawned on me we heard from Randy himself, he came here, took the stand, took the oath and testified. He didn't have to. When he did testify though, did you hear him deny having transported Xavier? Did you hear him deny transporting him to either to Villa Pesquera or the abandoned house or the Burger King or the basketball court and park across the street? Did you hear him deny any of that? He didn't. That absolutely cannot go unnoticed by you…
>
> In conclusion ladies and gentlemen and most important, the defendant came before [the jury], took the stand and did not deny the allegations. Had the opportunity to and when given the opportunity to he did not deny the charges."

**Crim. No. 14-199,** ECF No. 153 at 129-30. The defense did not object to the government's summation. The next day, the Court discussed a proposed jury instruction with the parties that read as follows:

> [K]eep in mind that the defendant has a Constitutional right to be presumed innocent and not to testify. Actually when a defendant does not testify no inference of guilt may be drawn from the fact that the defendant did not testify.
>
> In this case the defendant [petitioner] decided to testify. He provided testimony on certain subjects upon which questions which were posed to him.
>
> Regardless of what might have been argued by counsel, I instruct you that you should examine and evaluate his testimony, that is what he said, what he testified about, and you are not to speculate or draw any adverse inference on matters that he did not testify about. The defendant[']s

testimony is to be evaluated just as you would evaluate the testimony of any witness with an interest in the outcome of the case.

*Charriez-Rolón*, at 50. After some comments from the government (suggesting an instruction even more favorable to then defendant)[2] the Court retuned:

> [I]t is a curative instruction, a cautionary instruction for the jury. And for the record what I am referring to is that this is an instruction that is submitted to the jury because of the government[']s comments during rebuttal, that the jury was to consider, or could consider that the defendant while taking the stand did not deny the conduct in Counts 1 and 2. Actually what it reads, in one of the sections is "Regardless of what may have been argued by counsel", I can add what might have been argued by counsel for the government. So that will pinpoint the attorney making the statement. But I don't want to unduly call the attention to a subject that otherwise could or could not have been ignored. I don't know.

*Charriez-Rolón*, at 50. Immediately after, the Court asked the defense if it had any concerns with what was being discussed. The defense "said no, and thanked the judge." *Id*. Actually, defense counsel asserted that he was going to request the exact same clarification being made to the curative instruction to be provided to the jury. Once the jury was called in, the Court issued the instructions including the edited curative instructions cited above.[3] The Court then granted the

---

[2] "I am wondering if it might not make sense even to make it stronger, perhaps mentioning directly, statements made by counsel for the government or something along those lines. So that it becomes even more [evident] that this is curative instruction to anything that happened in the closing argument." *United States v. Charriez-Rolón*, 923 F.3d at 50.

[3] Specifically, the Court issued the following curative instruction to the jurors: "Also, at the beginning of the case and throughout the case I have instructed you to keep in mind that the defendant has a Constitutional right to be presumed innocent and not to testify. Actually when a defendant does not testify no inference of guilt may be drawn from the fact that the defendant did not testify. In this case the defendant… decided to testify. He provided testimony on certain subjects upon which questions [] were posed to him. Regardless of what might have been

parties an opportunity to voice objections, if any. No objections were voiced. *Id.* Petitioner was found guilty on all counts. The Court sentenced him to a term of 420 months of imprisonment on Counts One and Two, and 120 months on Count Three, all to be served concurrently. **Crim. No. 14-199**, ECF No. 137.

Petitioner appealed, **Crim. No. 14-199,** ECF No. 138, Ap. Case No. 17-1123, "making two main arguments… that the government did not present enough [evidence]… and… that the prosecutor's closing arguments violated his constitutional rights by spotlighting his decision to limit his testimony and not address his guilt or innocence." *Charriez-Rolón*, at 50. In its relevant part, as it pertains to the prosecutor's comments on petitioner's silence, the Court of Appeals for the First Circuit determined:

> Even if the argument is not waived, however, the government insists that the jury could reasonably infer that if [petitioner] could truthfully deny or explain the evidence against him, he would have. For our part, we think the government's waiver argument is a winning one.
>
> Remember, [petitioner]'s counsel readily agreed that the judge adequately cured any error in the prosecutor's comments by telling the jurors that "[r]egardless of what might have been argued by counsel for the government, … you … are not to speculate or draw any adverse inference on matters that [petitioner] did not testify about." His lawyer, don't forget, thanked the judge for adopting the prosecutor's suggested tweak (which prompted the judge to add the "[r]egardless of what might have been argued by counsel for the government") – a tweak that worked in his client's favor, for sure. That is waiver, pure and simple.

---

argued by counsel for the government, I instruct you that you should examine and evaluate his testimony, that is what he said, what he testified about, and you are not to speculate or draw any adverse inference on matters that he did not testify about. The defendant's testimony is to be evaluated just as you would evaluate the testimony of any witness with an interest in the outcome of the case." **Crim. No. 14-199,** ECF No. 154 at 12-13.

*Charriez-Rolón*, at 50. The Court of Appeals explained its authority to excuse such waiver but it determined that justice demanded no such action in petitioner's case. *Id*.[4] The Supreme Court denied petitioner's certiorari petition on October 7, 2019. *Charriez-Rolón v. United States*, 140 S.Ct. 292 (2019).

Petitioner then filed the instant petition claiming his trial attorney was constitutionally ineffective for failing to object to the government's comments on his trial testimony and by subsequently agreeing with the Court's curative instruction, waiving the issue for review. **ECF Nos. 1, 11**. The government opposed. **ECF No. 8**.

## II. Legal Standard

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (citing *Hill v. United States*, 368 U.S. 424, 426-27 (1962)). Claims that do not

---

[4] In its Opinion, the Court of Appeals explained that the standard for unpreserved challenges to the comments on petitioner's silence triggered a "clear and gross injustice" standard which necessitates "an egregious misapplication of legal principles." *Charriez-Rolón*, 923 F.3d at 51.

allege constitutional or jurisdictional errors are properly brought under § 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Id.*

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted). This standard is "highly deferential" and courts "indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Walker v. Medeiros*, 911 F.3d 629, 633 (1st Cir. 2018) (citing *Strickland*, 466 U.S. at 689).

The second prong requires that defendant "show that the deficient performance prejudiced the defense, which requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016).

Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012). Thus, the petitioner bears a heavy burden of proof in this regard. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996).

## III.   Discussion

Petitioner challenges the effectiveness of his trial attorney. Specifically, petitioner points to counsel's failure to object to the government's comments on his testimony at trial and complacency with the Court's curative instruction. **ECF No. 1**, **11** at 6. The result of these omissions was the waiver of the issues on direct appeal. *Id*. Ultimately, petitioner claims, there is reasonable probability that the remarks unduly influenced the jury and that "the First Circuit would have reversed [the] conviction… had trial counsel not waived the argument." **ECF No. 11** at 6.

The petition fails both at the effectiveness and the prejudice prongs of the *Strickland* test.

### A.   Effectiveness

The Court begins with a First Circuit quote to set the tone: "[o]nly when counsel's strategy was so patently unreasonable that no competent attorney would have made it may we hold such performance as deficient." *Watson v. United States*, 37 F.4th 22, 28 (1st Cir. 2022) (internal citations omitted). In this case, counsel's strategy must be assessed in light of the prosecutor's challenged conduct: remarks about petitioner's trial testimony during the government's closing arguments.

The Fifth Amendment prohibits prosecutors from commenting on a defendant's exercise of his right to remain silent. *See generally United States v. Robinson*, 485 U.S. 25, 30 (1988); *Griffin v. California*, 380 U.S. 609, 615 (1965). Prosecutors thus, ought to thread lightly in this area. *United States v. Sepúlveda*, 15 F.3d 1161 (1st Cir. 1993). However, not all comments are precluded. Even petitioner concedes that the government does not infringe upon his Fifth Amendment rights when such comments are "a fair response to a claim made by the defendant or his counsel." **ECF No. 11** at 7 (quoting *United States v. Robinson*, 485 U.S. at 32). When examined in detail, there is no doubt that petitioner's arguments under the Fifth Amendment are unavailing.

### (i) The lack of "on-point" case law in petitioner's moving papers

As mentioned before, petitioner here took the stand and testified at trial. However, petitioner relies on case law dealing with prosecutorial comments in cases where the defendant did not take the stand. Indeed, petitioner heavily relies on *Gomes v. Brady*, *infra*. *See* **ECF No. 11** at 7-8, 12. However, "Gomes.. did not testify." *Gomes v. Brady*, 564 F.3d 532, 536 (1st Cir. 2009). Likewise, petitioner's reliance on *U.S. v. Ayewoh*, *infra*, and *U.S. v. Robinson*, *infra*, is questionable because both cases dealt with the total absence of a defendant's trial testimony. *See* **ECF No. 11** at 8; *Cf. U.S. v. Ayewoh*, 627 F.3d 914, 923 (1st Cir. 2010) ("Ayewoh did not testify at trial"), *U.S. v. Robinson*, 485 U.S. 25, 27 (1988)("Respondent did not testify at trial.").

### (ii) The perils of taking the stand

As a defendant in a criminal prosecution, petitioner could not have expected the government to stay mute to his testimony during trial. Contrary to petitioner's unsupported blanket contention, "[w]hen he took the witness stand… he voluntarily relinquished his privilege of silence[.]" *Caminetti v. U.S.*, 242 U.S. 470, 494 (1917); *see also Brown v. United States*, 356 U.S. 148, 156 (1958)("cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute."). In those instances, a defendant "ought not to be heard to speak alone of those things deemed to be for his interest… without the fair inference which would naturally spring from his speaking only of those things which would exculpate him and refraining to speak upon… which might incriminate him." *Id*. Accordingly, the government correctly posits that it did not "err in drawing the jury's attention to [petitioner]'s selective testimony." **ECF No. 8** at 11.

Moreover, the Supreme Court has rejected the notion that "any direct reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment…" *U.S. v. Robinson*, 485 U.S. at 31. "[S]uch a reading would be quite inconsistent with the Fifth Amendment, which protects against compulsory self-incrimination[,]" it added. *Id*. For these reasons, Petitioner's general plaints against the outcome of his decision to take the stand do not withstand scrutiny under the Constitution or § 2255.

### (iii) The holes in petitioner's test and the mountain of evidence against him

Citing *Gomes*,[5] petitioner points to a two-pronged analysis drawn-up by First Circuit in order to test the government's statements against his right to remain silent (which, again, is not the case here). **ECF No. 11** at 8; *Gomes*, 564 F.3d at 537. To wit, the First Circuit first "determine[s] whether the comment offended the Fifth Amendment by insinuating improperly that [defendant]'s failure to testify was evidence of guilt" and, second, "ascertain[s] whether the comment had a substantial and injurious effect or influence in determining the jury's verdict." *Id.*, at 538 (cleaned up). **ECF No. 11** at 8. But petitioner left out other parts of the test applied in *Gomes*.

Importantly, in *Gomes*, the Court of Appeals found that although "improper[,]" the prosecutor's comments did not have a "substantial and injurious effect on the verdict." *Gomes*, 564 F.3d at 538. To reach that determination, the *Gomes* Court noted that "[t]he single remark was an isolated instance of misconduct… and the evidence against *Gomes* was compelling." *Id*. This Court could say the same in this case without so much as batting an eye.

Indeed, even if the prosecutor's comments here were improper, they were short, isolated remarks proffered during the government's closing argument.[6] But more importantly, the

---

[5] Petitioner did not discuss the facts that moved the First Circuit to issue its opinion in *Gomes* or its correlation, if any, to the case at bar. Again, in *Gomes*, the defendant did not testify on his behalf during trial.

[6] Although this issue was not raised by petitioner, hence the footnote, the Court finds it reasonable to add a coda. The fact that the comments were some of the "last words spoken to the jury by trial attorneys[,]" *United States v. Manning*, 23 F.3d 570, 575 (1st Cir. 1994), is likewise attenuated by the curative instruction given to the jury in this case and the exceedingly overwhelming evidence (including abundant evidence that is not based on credibility)

comments are insignificant when compared against the staggering amount of evidence marshaled against petitioner, which included a disturbingly detailed testimony of petitioner's sexual abuse told by the underaged victim himself, as well as:

> physical evidence — the pellet gun and the tub of Vaseline; documentary evidence — account statements for the bunk bed Charriez purchased for XFS; photographic evidence — the images found on Charriez's cellphone; and testimony from police officers — about the incriminating statements made by Charriez; a computer Forensic Examiner — about finding and flagging the pornographic images on Charriez's cellphone; XFS's school social worker — about XFS's school life during the abuse; XFS's mother — about how Charriez got close to XFS[.][7]

*Charriez-Rolón*, at 48. Thus, in light of the mountain of evidence presented against petitioner, the government's comments during closing arguments had no "substantial and injurious effect on the verdict." *Gomes*, 564 F.3d at 538; *see Delaney v. Bartee,* 522 F.3d 100, 105 (1st Cir.2008) ("Given this overwhelming evidence… we conclude that the two additional questions posed by the prosecution did not have a substantial and injurious effect or influence in determining the jury's verdict.") (cleaned up); *United States v. Hardy*, 37 F.3d 753 at 759 (1994) ("An improper comment… may seem insignificant where the evidence is overwhelming..."); *United States v. Taylor*, 54 F.3d 967, 980 (1st Cir. 1995)("the possibility that the comments… affected appellant's

---

against petitioner. Indeed, in *Manning*, the Court emphasized that the "district court not only failed to give curative instructions to counter the improper First and Second Passages, but it also tacitly indicated that the arguments in these Passages were proper by overruling defense counsel's contemporaneous objections to them." *id*., at 575. Thus, *Manning,* and its "last words spoken" concerns are non-issues here.

[7] The evidence also serves as a buffer against any prejudice argument, which petitioner must show in order to be entitled to § 2255 relief. *See United States v. Rodríguez*, 675 F.3d 48, 63 (1st Cir. 2012).

substantial rights is diminished by the potency of the government's proof… testimony was unequivocal and corroborated on many points. Moreover, several witnesses… noted appellant's presence and described his behavior in a way that strongly suggested his complicity in the crime. In view of the substantial evidence against appellant, we find it highly unlikely that the jury could have been swayed by the prosecutor's amphibolous remarks.") (quoting *United States v. Mejía-Lozano*, 829 F.2d 268, 274 (1st Cir. 1987)). Therefore, applying *Gomes*, as petitioner suggests, his § 2255 petition fails.

But *Gomes* cuts even deeper against the petition. To wit, the *Gomes* Court also found that "although the trial court in this case did not offer immediate instructions… it did provide the standard instructions on the defendant's right not to testify and the purpose of closing arguments." *Gomes*, 564 F.3d at 539. Contrary to *Gomes*, aside from the regular instructions given to the jury, this Court tailored and issued a curative instruction to address any potential effect the government's comments may have had.

### (iv) The unchallenged curative instruction[8]

Petitioner does not challenge the effectiveness, adequacy or otherwise attack the content of the curative instruction in the instant petition.[9] **ECF No. 1, 11**. He only questions its timing (less than 24 hours from the challenged remarks). Even then, petitioner did not develop this

---

[8] *See* n.4, *supra*.

[9] The instant petition was filed by petitioner's counsels, attorneys Juan R. Acevedo-Cruz and Jeremy Gordon. **ECF No. 1** at 12; **11**.

argument properly nor did he support it with authorities. *See* Local Civil Rule 7; *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Indeed, petitioner only referenced *Gomes* for the conclusion that the prosecutor's summation "'had a substantial and injurious effect or influence' in the jury." **ECF No. 11** at 12 (quoting *Gomes* at 537). But *Gomes* does not support his contention.

In *Gomes*, the prosecutor made improper comments on his closing arguments and the defense objected. Contrary to petitioner's paper-thin contentions, the District Court in *Gomes* did not issue a curative instruction *immediately*. Instead, according to the First Circuit, "[t]he court *later* instructed the jury members that they should not draw any inferences against Gomes because he had not testified and that statements of the lawyers were not evidence." *Gomes*, 564 F.3d at 536 (emphasis added).

### (v)  The prosecutor's right to comment on petitioner's trial testimony

Apart from petitioner's superficial arguments, the Court notes that petitioner's testimony on his behalf during trial intended to convince the jury on issues of guilt or innocence. Among other details, petitioner offered his albinism condition as a potential explanation regarding the seizure of a Vaseline jar among his belongings and the tinted windows of his car, both of which were pieces of evidence presented by the government in its case-in-chief to corroborate its theory of the case and XFC's testimony regarding the petitioner's *modus operandi*.[10] **Crim. No. 14-199**,

---

[10] In essence, petitioner would regularly apply Vaseline on XFC's anus and penis to sexually abuse him. Several of these sexual assaults occurred under the cover of petitioner's tinted-window motor vehicle. *Charriez-Rolón*, 923 F.3d 47-48.

**ECF No. 152** at 96-110; **ECF No. 153** at 20-21, 28-54. However, petitioner chose not to go any further in his testimony. By limiting his account of the events, using the words of the government, he intended to "curtail the negative inferences that could be drawn from these items without addressing the substantive charges against him." **ECF No. 8** at 13; *see Caminetti*, 242 U.S. at 494.

Even if the comments were in fact improper (determination the Court need not reach here) and counsel's failure to raise an objection thereto rendered his services ineffective, the petition must be denied because it fails to meet *Strickland*'s prejudice prong.

**B.    Prejudice**

Petitioner bears a heavy burden of proof in meeting *Strickland*'s bar. *See Argencourt v. United States*, 78 F.3d at 16. Showing counsel was ineffective by not objecting to the comments on his right to remain silent is necessary but not sufficient. Petitioner must also establish "that it was so prejudicial as to undermine confidence in the outcome of the trial… and the fundamental fairness of the result." *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993)(cleaned up). The Court has read the petition and the memorandum in support thereof, **ECF Nos. 1, 11**, front and backwards. However, it has been unable to find a claim of prejudice.

Noticing this issue, too, the government points out that petitioner even "concedes he cannot meet *Strickland*'s prejudice prong." **ECF No. 8** at 16 (quoting **ECF No. 11** at 12-13: "it is impossible to say how the prosecution's statements may have impacted the jury's decision."). It

is not on the government or this Court to make a showing of lack of prejudice. Therefore, petitioner's failure to even suggest the prejudice he endured by trial counsel's alleged inertia is fatal and calls for denial of the petition on this omission alone. *United States v. Caparotta*, 676 F.3d at 219–20 (1st Cir. 2012).

And even if the Court construed petitioner's conclusion that were it not for "counsel's ineffectiveness, there [would be] a reasonable probability that a different result would have been reached at trial or on appeal[,]" as a claim for prejudice, it also falls short. **ECF No. 11** at 13-14. Notably, petitioner potentially alludes to a purported prejudice on two different stages of the proceedings: trial and appeal. Thus, for sake of completeness (because the petition fails to state a claim of prejudice on its face), a brief discussion on both fronts ensues.

First, petitioner's assertions on prejudice during trial are quite undeveloped. As stated before, nowhere in the petition does petitioner dare suggest that the outcome of the trial would have been different would it not have been for trial counsel's silence on the prosecutor's closing comments. And understandingly so, as it would have been difficult even for petitioner's seasoned attorney considering the overwhelming evidence against him. To the contrary, as highlighted by the government, petitioner affirmatively stated that "it is impossible to say how the prosecution's statements may have impacted the jury's decision." **ECF No. 11** at 14. Therefore, petitioner cannot meet the prejudice prong since he cannot show that he suffered prejudice during trial.

Second, petitioner's unsubstantiated averments of prejudice due to the application of a heightened standard of review are also unavailing. As noted before, petitioner does not develop this position, nor does he cite any authority in support. **ECF No. 11**. Regardless, this argument is meritless. While petitioner is correct that a preserved objection at trial normally warrants a relatively less exacting standard of review on appeal, being subjected to plain error review on appeal due to an unpreserved objection at trial is not prejudicial under *Strickland*. The *Strickland* analysis focuses on the fairness of the outcome of the challenged proceeding—which, as relates to petitioner's arguments, is his conviction at trial. Thus, for *Strickland* purposes, his trial counsel's performance is not measured against the outcome of the appeal, but of the trial.

Accepting petitioner's undeveloped theory requires a finding prejudice on appeal from a non-prejudicial error at trial. The Court will not accept such a *non sequitur*. That is, it could lead to a situation where an error at trial with no reasonable probability of affecting the trial's outcome (*i.e.*, non-prejudicial) would nonetheless be prejudicial on appeal because a higher standard of review applied as a consequence. This result is neither sound nor consonant with *Strickland* and would in practice be an end-run around its prejudice prong. *See United States v. Resnick*, No. 2:11 CR 68, 2019 WL 6912334, at *15 (N.D. Ind. Dec. 19, 2019), *aff'd,* 7 F.4th 611 (7th Cir. 2021) ("The analysis for which *Resnick* advocates would produce the perverse result of vacating his conviction – despite there being no prejudice on the outcome of his jury trial – on

the basis that the Court of Appeals would have ruled differently had the question been put before it *de novo.*").

Having clarified the above, the Court denies the instant petition for failure to meet the *Strickland* prejudice prong.

IV. **Conclusion**

In light of all the above, the petition at **ECF No. 1 is DENIED**. Judgment shall be entered accordingly.

V. **Certificate of Appealability**

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Considering all the above, the Court **DENIES** the COA.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of February 2024.

                                                 **S/AIDA M. DELGADO-COLÓN**
                                                 **United States District Judge**